STATE OF NEW HAMPSHIRE

STRAFFORD, SS.                                                                      SUPERIOR COURT

Melissa Tripp
224 Little Niagra Road
Strafford, NH 03884

v.

Exeter Hospital, Inc.
5 Alumni Drive
Exeter, NH 03833

Docket No: 219-2023-CV-00069

## COMPLAINT AND REQUEST FOR JURY TRIAL

NOW COMES Melissa Tripp, Plaintiff, by and through her attorney, Law Office of Leslie H. Johnson, PLLC, and complains against Exeter Hospital, Inc., Defendant, and in support thereof states as follows:

### INTRODUCTION

### PLAINTIFF REQUESTS A TRIAL BY JURY

1. Ms. Melissa Tripp, brings this action pursuant to the statutory and common laws of the State of New Hampshire and the United States, particularly New Hampshire's Law Against Discrimination, RSA 354-A, et seq. and Title VII, for religious discrimination including termination, hostile environment and failure to accommodate. Ms. Tripp also files a claim for wrongful discharge, based upon her objection to the flu vaccine and request for religious exemption, and also because her conscientious objection is supported by other public policies. Ms. Tripp seeks to recover all damages as allowed by law, and all equitable relief to which she is entitled.

### PARTIES

2. Ms. Melissa Tripp (hereinafter, "Ms. Tripp" or "Plaintiff"), is a resident of

1

Strafford, Strafford County, New Hampshire, who was employed by Exeter Hospital, Inc. from approximately June 17, 2019 until her termination on Defendant 1, 2020.

3. Exeter Hospital, Inc. (hereinafter "EHI" or "Defendant") is a domestic non-profit corporation in the County of Rockingham, with a principal mailing address of 5 Alumni Drive, Exeter, NH 03833.  Defendant's President, Kevin J. Callahan; Chairman of the Board of Directors, William Schleyer; and Treasurer, Kevin J. O'Leary have an address of, and/or are located at, c/o Exeter Hospital, Inc., 9 Alumni Drive, Exeter, NH 03833.

4. EHI is responsible for the actions of their employees, under the theories of vicarious liability and/or *respondeat superior,* as well as their own actions and failures to act.

## JURISDICTION & VENUE

5. Venue and jurisdiction are proper as Ms. Tripp is a resident of Strafford County, New Hampshire, and resided there at all times pertinent to this Complaint.

6. Ms. Tripp filed a timely Charge of Discrimination with the New Hampshire Commission for Human Rights ("NHCHR"), Case EF(R) 0115-21 / 16D-2021-00089, on March 26, 2021.  The Charge was withdrawn from the NHCHR and a Notice of Right to Sue was issued by the EEOC on November 22, 2022 and received on November 26, 2022.  This Complaint is filed within 90 days of receipt of the Notice of Right to Sue.

## STATEMENT OF FACTS

7. Ms. Tripp was employed by EHI from approximately June 17, 2019 as a Registered Nurse working on a per diem basis, until she was wrongfully terminated for discriminatory and retaliatory reasons on December 1, 2020.  Ms. Tripp was expecting to increase her hours to full time.

8. Ms. Tripp identifies as a person of faith.

9. This claim is for discrimination on the basis of religion, and failure to accommodate her religious beliefs, as well as retaliation for requesting the accommodation of not having to take the flu shot.

10. Ms. Tripp's job was as a Registered Nurse, who worked in the PAT department, usually in her office, which had 8-foot partitions blocking noise and also effectively creating social distance for employees. Ms. Tripp's job was calling to call patients to review medical charts, which did not require direct physical contact with patients. Neither did Ms. Tripp provide direct patient care.

11. In the previous year Ms. Tripp declined the influenza vaccine by filing the required form, which was accepted by EHI, on the basis of a religious exemption.

12. Upon information and belief, EHI gets a bonus from the government, or is not fined, for reaching certain percentages of vaccination of its employees. Therefore, the requirement of vaccines, despite potential deleterious health effects of the vaccine and that it constitutes a battery, is at least partially for financial gain of EHI. It is believed that hospitals below a certain vaccination rate receive less reimbursement from Medicare/Medicaid. In addition, it is possible that EHI gets a bonus for each employee vaccinated, which will be determined through discovery.

13. Given Ms. Tripp did not directly work with patients, and she could have been accommodated as in the past, there was no valid reason for EHI to require her to receive a flu vaccine. In the past, Ms. Tripp and others were required to wear a mask when working with patients if they declined the flu vaccine, which Ms. Tripp begrudgingly did.

14. On or about September 24, 2020, EHI sent out a memo to all staff explaining the 2020-2021 Influenza Vaccine Requirement, along with a "Declination Request for Influenza Vaccination."

15. The referenced Exeter Hospital, Inc. Policy, *requires* that the employee complete "consent Form #797". While Ms. Tripp is not in possession of that form, she assumes it waives any liability, either to the manufacturer and/or the hospital, for deleterious effects of the shot, including death, as well as allowing transmission of private health information re: receipt of the vaccine, despite any objection.

16. Requiring a flu vaccine that includes a waiver of liability, and allowing private health information to be transmitted, is unconscionable.

17. Said Declination form asked the reason for declining the vaccination, including allergic reaction, and any Guillain Barre Syndrome event. It also included declination for a "sincerely held religious beliefs impacting my decision to decline vaccination," which box Ms. Tripp checked off.

18. The nature of Ms. Tripp's religious beliefs was, and are, none of EHI's business, as delving into them is intrusive, and not allowed.

19. Near the end of October 2020, Ms. Tripp completed a Flu Shot Exemption Form, indicating declination due to personal and religious reasons due to ingredients in the vaccine.

20. Employees who failed to have the vaccine, or be granted an exemption, were threatened by Defendant with a "suspension" or termination from work.

21. Forcing medical treatment on a person, particularly a vaccination, constitutes a battery.

22. In fact, requiring an employee to receive a flu vaccine is believed contrary to state law:

> N.H. Rev. Stat. Ann. § 151:9-b requires that "[b]efore November 30th of each year, each hospital, residential care facility ... shall provide to its **consenting employees** annual immunizations against influenza, in accordance with the recommendations of the Advisory Committee on Immunization Practices of the Centers for Disease Control, and subject to the availability of an adequate supply of the necessary vaccine, **and subject to exemptions for medical contraindications and religious beliefs.**" RSA 151:9-b, IV, in pertinent part (emphasis added.)

23. The EHI form, in part, states" "[r]eligious exemption requests will be reviewed by the Religious Exemption Review Panel to ensure that the exemption is firmly held and sincere." It does not state who is qualified to pass judgment on employees' religious beliefs, and this is contrary to individuals', including Ms. Tripp's, rights to religious liberty.

24. Ms. Tripp was advised by Chris Callahan, Vice President of Human Resources, that additional information was required to support her request for the flu shot exemption.

25. Mr. Callahan threatened that Ms. Tripp would be terminated for failing to provide information which she believed to be private, including to give details of her "faith" and/or if she had health conditions which would prevent her from having the flu shot.

26. Mr. Callahan contacted Ms. Tripp a few weeks after she filed her exemption form, asking what ingredients within the vaccine she was against.

27. Ms. Tripp provided further information, as requested, and explained her long-standing and sincerely held religious beliefs. She explained she objected to fetal tissue, dog kidney cells, additional chemicals and additives, and stated, "We do not believe in changing our body in any way and keeping it as pure as possible." The reality is that flu vaccines can contain (but are not limited to) chemicals, preservatives, *mammalian cells*, and more.

28. There were multiple email exchanges between Mr. Callahan and Ms. Tripp. She filled out her second exemption form to state that her reason for declination was "sincerely held and longstanding religious beliefs." Mr. Callahan asked for her religious denomination. An employee should not have to explain their religious beliefs. In fact, one does not need to be part of any denomination to have firmly held religious beliefs.

29. During the multiple email exchanges between Ms. Tripp and Mr. Callahan, she specifically requested (1) to know who made up the review committee and their qualifications to determine her faith as sincere or not; and (2) that she be present during the meeting that was to determine her fate.

30. Ms. Tripp's reasonable request was denied, and she was told they did not allow staff to be present during these discussions. Ms. Tripp was also not given any further information about who makes up this committee and their qualifications, as if anyone is qualified to determine if someone's religious beliefs are valid or sincerely held.

31. To the best of Plaintiff's knowledge, by November 27, 2020, EHI's committee had still not reviewed Ms. Tripp's 2nd form.

32. Ms. Tripp was denied the flu shot exemption but provided with no written explanation of same, and on Friday, November 27, she was informed by a Ms. Wagner, that if she did not receive her shot by November 30, her employment would cease on December 1, 2020.

33. On December 1, 2020, Ms. Tripp was terminated for failing to agree to and to receive the flu shot, a battery, despite her request for an exemption as a reasonable accommodation.

34. The flu shot, year to year, is believed to have a very low (infinitesimal), efficacy rate, not supporting the risks incurred by receipt of the vaccine.

35. EHI had no right to impose their judgment regarding Ms. Tripp's personal religious beliefs, which were grounded in her faith, as she expressed in her exemption request and reconsideration, including believing she should keep her body as pure as possible, avoid vaccines which may contain (but are not limited to) chemicals, preservatives, *mammalian cells*, and more.  Ms. Tripp objected to being involuntarily injected with the flu vaccine, which was against her religious beliefs.

36. As an employer, EHI should not have delved deeply into their employees' religious beliefs, as that is discriminatory, intrusive, unwarranted, and contrary to applicable law.

37. In addition, in denying the request, the employer recognized that Ms. Tripp in fact did have sincerely held religious beliefs.

38. Ms. Tripp's termination constitutes religious discrimination as she provided sufficient information to justify her exemption request.

39. Ms. Tripp's termination was discriminatory and in retaliation for requesting the flu shot exemption for her religious beliefs.

40. EHI failed to reasonably accommodate Ms. Tripp and her religious beliefs, which easily could have been done with no undue hardship, just as it had been in the past years, which also proved the accommodation worked.  Defendant failed to grant Ms. Tripp this reasonable accommodation.

41. Employees should not have to forfeit their rights under the state law and the constitution, and rights under state statutory law, or the right to be free from a battery, in order to maintain their employment.

42. Ms. Tripp's exemption request supported by her constitutional and statutory rights should have had priority over Defendant's financial gain.

43. Ms. Tripp was subjected to an assault; in that she was put in fear of physical contact, and was fired for refusing to consent to a battery (physical contact against her free will).

44. Upon information and belief, many other employees were forced into taking the flu vaccine against their wishes because they were unable to afford to lose their jobs. Those vaccinations constitute a battery, as said shots are believed to have occurred under duress, threat of job loss.

45. An employee who undergoes a vaccine mandated under the threat of job loss does not "voluntarily" receive the vaccine, and doing so violates their constitutional rights.

46. The actions described herein, and as experienced by Ms. Tripp, constitute harassment, failure to accommodate, discrimination and retaliation, all contrary to NH RSA 354-A, *et seq.,* and Title VII.

47. Ms. Tripp was discriminated against by EHI based on her religion and her request for a religious exemption. She was harassed on the basis of her sincerely held religious beliefs.

48. Ms. Tripp was retaliated against by EHI for filling out exemption forms, for declining to get the vaccine as described above, including but not limited to attempting to coerce and threaten her into being vaccinated by threatening her job, denying her exemption, failing to meaningfully enter the interactive process or providing an accommodation, and then terminating her in retaliation for her exercise of her rights.

49. In fact, it appears there were no established standards for granting or denying an exemption, and the offer to consider same was illusory.

50. EHI knew, or should have known, that their actions described herein were illegal.

EHI's actions were contrary to the law and done knowingly, maliciously, with reckless indifference to Ms. Tripp's protected rights, and were egregious and wanton, thus justifying an award of enhanced/liberal compensatory damages and punitive damages.

51. Due to the actions of EHI, Ms. Tripp claims damages which are within the jurisdictional limits of this Court, including damages for punitive damages, liberal compensatory/enhanced damages, back and front pay and lost benefits, emotional distress, embarrassment, humiliation, aggravation, anxiety, fear, loss of sleep, physical and emotional symptoms and distress, damages to reputation, tax consequences, reasonable costs and attorneys' fees related to this action, and all other damages as allowed by law, which Ms. Tripp has suffered due to the discrimination/harassment and retaliation, and for her other claims, by EHI and its agents as set forth herein.

52. Ms. Tripp requests all equitable relief to which she may be entitled, including but not limited to reinstatement, revision of the Defendant's exemption/declination policies for vaccines, including flu and covid, to avoid trampling employee's religious freedom, and freedom to choose their own course of medical treatment.

**COUNT I**
**RSA 354-A, et seq., and TITLE VII**
**RELIGIOUS DISCRIMINATION, HARASSMENT/HOSTILE ENVIRONMENT**

53. Ms. Tripp incorporates herein each and every allegation elsewhere in the Complaint as if fully set forth herein, and further states as follows:

54. Ms. Tripp asserts that she was discriminated against because of her religious beliefs, as described above.

55. NH RSA 354-A, et seq., and Title VII, prohibit discrimination on the basis of religion and religious beliefs, including a hostile environment, and termination on the basis of

religious beliefs.

56. Title VII prohibits "discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Xiaoyan Tang* v. *Citizens Bank, N.A.*, 821 F.3d 206, 215 (1st Cir. 2016) quoting from 42 U.S.C. § 2000e–2(a)(1). NH RSA 354-A, et. seq. is consistent therewith, including NH RSA 354-A:2.

57. Once an employee, such as Ms. Tripp, demonstrates their religious belief conflicts with an employment condition, "the burden then shifts to the employer to show that it offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship." *Id.*

58. Ms. Tripp suffered discrimination, harassment and hostile environment on the basis of her religion; she was treated differently than her co-workers, ostracized, and experienced a hostile environment, which no reasonable person should be forced to endure.

59. For Ms. Tripp to disobey sincerely held religious beliefs would violate her conscience.

60. Ms. Tripp claims that the treatment she received as described herein was on the basis of her religious beliefs, and constituted religious discrimination and harassment, all contrary to NH RSA 354-A, et seq., and Title VII.

61. Ms. Tripp claims the religious discrimination/hostile environment caused her damages as set forth herein.

62. Ms. Tripp requests all damages as available under the applicable laws, and all equitable relief to which she may be entitled.

## COUNT II
## RSA 354-A, et seq., and TITLE VII
## RELIGIOUS DISCRIMINATION/FAILURE TO ACCOMMODATE

63. Ms. Tripp incorporates herein each and every allegation elsewhere in the Complaint as if fully set forth herein, and further states as follows:

64. Ms. Tripp's reasonable accommodation based on her religious beliefs, entailed allowing Ms. Tripp to wear a mask when others are within six feet of her while at the office, was at least partially a reasonable accommodation, and in fact, EHI had required Ms. Tripp to work under this very same scenario the year before with no undue hardship to EHI.

65. The mask wearing is believed to actually be unreasonable under the law, however, in order to maintain her job, Ms. Tripp complied with that request.

66. Ms. Tripp's reasonable accommodation was not a hardship upon EHI; however, instead of accommodating her, as required by law for her religious beliefs, it terminated her in violation of NH RSA 354-A, et seq., and Title VII.

67. Ms. Tripp claims the discrimination against her and failure to accommodate her religious rights, have caused her damages as set forth elsewhere herein.

68. Ms. Tripp requests all damages as available under the applicable laws, and all equitable relief to which she may be entitled.

## COUNT III
## RSA 354-A, et seq., and TITLE VII
## RETALIATION BASED ON RELIGION

69. Ms. Tripp incorporates herein each and every allegation elsewhere in the Complaint as if fully set forth herein, and further states as follows:

70. EHI retaliated against Ms. Tripp, by denying her request for reasonable accommodations, requiring her to do things which were not actually "reasonable", such as mask

11

wearing, acted in a hostile manner during the meeting about her accommodation, did not seriously consider her accommodation and then fired her, all in retaliation for her exercise of her rights to religious freedom, including but not limited to the filing of her exemption request.

71. Ms. Tripp claims she was retaliated against based on her religious beliefs and pursuing her rights thereunder, by her termination and otherwise, which has caused her damages.

72. Ms. Tripp requests all damages as available under the applicable laws, and all equitable relief to which she may be entitled.

## COUNT IV
## WRONGFUL DISCHARGE

73. Ms. Tripp incorporates herein each and every allegation elsewhere in the Complaint as if fully set forth herein, and further states as follows:

74. EHI wrongfully discharged Ms. Tripp, not only because of her request for a religious exemption, but because she refused to have the vaccine, which exemption they approved the year prior.

75. Ms. Tripp's religious concerns as expressed in her exemption requests coincides with a right not to be involuntarily subjected to a vaccine against her will by being injected.

76. Ms. Tripp's objection to and refusal to have the vaccine, also constitutes a conscientious objection, and is an act that public policy, rules, regulations and the law support.

77. As a result of her refusal to submit to the flu vaccine, she was harassed, retaliated against, and fired, which constitutes a wrongful discharge.

78. Said wrongful discharge has caused Ms. Tripp damages as set forth elsewhere herein.

79. Ms. Tripp claims all damages as allowed to her by law, and all equitable relief to which she may be entitled.

WHEREFORE, Ms. Tripp respectfully prays that this Honorable Court and/or a jury order and award the following relief:

A. Back wages, together with lost fringe benefits and any other benefits, including increased retirement benefits, which Ms. Tripp would have earned had she not been terminated;

B. Future wages, fringe benefits, loss of earning capacity and other benefits;

C. Enhanced/liberal compensatory, liquidated, and double damages;

D. Punitive damages;

E. An amount to be awarded by the Court to make up for any adverse tax consequences due to any judgment or award;

F. All damages which are available under the above-cited laws;

G. All available pre-judgment and post-judgment interest;

H. Reasonable attorneys' fees, interest and costs;

I. Reinstatement to the position that Plaintiff should have held;

J. An injunction against EHI from mandating any flu and/or covid-related vaccine/shots;

K. All equitable relief which may be available, as appropriate; and

L. Such other and further relief as is just and equitable.

                Respectfully submitted,
                **MELISSA TRIPP, Plaintiff**
                By her attorney

Dated: February 24, 2023                /s/ LESLIE H. JOHNSON
                Leslie H. Johnson, Esquire - #5545
                Law Office of Leslie H. Johnson, PLLC
                PO Box 265
                Center Sandwich NH 03227
                603.284.6600
                leslie@lesliejohnsonlaw.com